UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAMES WEST,

          Plaintiff,

     v.

SANTA CLARA VALLEY
TRANSPORTATION AUTHORITY,

          Defendant.

Case No. 23-cv-04554-NC

**ORDER GRANTING SUMMARY
JUDGMENT; ORDER DENYING
REQUEST FOR JUDICIAL NOTICE**

Re: ECF 75, 100, 101

This civil case arises out several instances where employees of Defendant Santa Clara Valley Transportation Authority (VTA) allegedly harassed self-represented Plaintiff James West. Defendant moves for summary judgment as to Plaintiff's Third Amended Complaint (TAC). As discussed below, the Court GRANTS Defendant's motion for summary judgment and DENIES Plaintiff's request for judicial notice.

## I. BACKGROUND

### A. Factual Background

VTA is an independent special district providing transportation services, including bus, light rail, and paratransit services, in Santa Clara County. ECF 75-22 (Kistler Dec.) ¶ 2. This action is based on alleged conduct by VTA employees near the Santa Clara County Law Library (SCCLL). The SCCLL has a parking lot for its patrons behind its building. ECF 75-2 (Huynh Tr.) 10:21–24. There is also a layover area for VTA buses, a parking lot where VTA vehicles park, and a VTA bus stop nearby. *Id.* 11:2–6, 40:9–14.

Plaintiff alleges the following interactions with the VTA:

United States District Court
Northern District of California

1

2    Plaintiff alleges that on August 10, 2021, he was in the SCCLL parking lot using

3    the library Wi-Fi connection after library business hours when a VTA operator looked into

     Plaintiff's vehicle and walked away.  ECF 75-8 (West Tr.) 91:1–25, 92:8–18.

4    Plaintiff then reported this alleged harassment to Roger Huynh, the Director of the

5    SCCLL, who then, at Plaintiff's request, sent an email to his VTA contacts, Maria Soto,

6    the Senior Management Analyst of the Operations Administration, and Inez Evans, the

7    (former) Chief Operating Officer, recounting the events reported by Plaintiff.  Huynh Tr.

8    21:16–22; 24:10–14.  Huynh emailed Plaintiff that he never received a reply to this email,

9    ECF 100, Ex. B, but Defendant produced an email that showed that Soto responded to

10   Huynh stating that she would "pass this on to the appropriate department to have this

11   looked into" and "include [VTA's] current Chief Operating Officer, David Hill" since

12   Evans no longer worked at the VTA.  ECF 75-32 (Soto Dec. ¶ 3, Ex. A).  The email also

13   showed that Hill later forwarded this email thread to Abrar Ahmad with a directive to

14   "have Field Operations investigate and monitor this location," and Ahmad responded that

15   he would do so.  *Id.*

16   Plaintiff then alleges that on February 24, 2022, a VTA driver who was talking on

17   the phone came near where Plaintiff was in his parked vehicle.  West Tr. 95:3–7, 95:21–

18   96:15.  Plaintiff then asked the employee to take the conversation elsewhere.  *Id.*  Plaintiff

19   stated that the driver then cursed at him, lunged at him, and tried to provoke him into a

20   physical altercation before leaving.  *Id.*  96:15–24, 98:9–12.  Defendant disputes that the

21   driver lunged.  ECF 75-7 (Schmidt Dec.) ¶ 11, Ex. F.  Later that day, Plaintiff alleges

22   another VTA driver came to the parking lot, circled around Plaintiff's car, gave Plaintiff

23   the middle finger, gestured toward Plaintiff to come out of his car, and made inaudible

24   statements before leaving.  West Tr. 98:13–99:24.

25   VTA records show that three reports were created on February 24, 2022, based on

26   Plaintiff's complaints to customer service.  ECF 75-17 (Ambei Decl.) ¶ 4, Exs. A–C.  The

27   first customer service complaint was supplemented on February 25, 2022, through

28   Plaintiff's email communications with a VTA customer service representative.  ECF 75-18

United States District Court
Northern District of California

1   (Ambei Decl.), Ex. A; ECF 75-8 (Schmidt Decl.) ¶ 12, Ex. G.  In these email

2   communications, the VTA customer service representative asked clarifying information

3   and advised Plaintiff that a supervisor was looking into the first case.  Schmidt Decl. ¶ 12,

4   Ex. G.  The VTA customer service records show that VTA identified the bus operator who

5   was the subject of this complaint, requested video footage, had the complaint reviewed by

6   a supervisor, further reviewed for accuracy, and ultimately closed the case on March 8,

7   2022.  Ambei Decl., Ex. A.

8       On August 24, 2022, Plaintiff filed a Claim for Damages with VTA under

9   Government Code Section 910.  ECF 75-28 (Lim Decl.), Ex. A.  The Claim described the

10  February 24, 2022, events and other conduct by VTA employees in the parking lot that

11  Plaintiff observed, such as "physically standing in the drive way" of the lot, "looking into

12  windows of cars parked," and "wondering [sic] the lot engaged in distracted cell phone

13  use."  *Id*.  VTA rejected this claim on March 2, 2023.  ECF 75-29 (Lim Decl.), Ex. B.

14      Plaintiff also alleges VTA committed further misconduct during unspecified times

15  between February and November 2022.  During these months, Plaintiff alleges that a VTA

16  bus operator twice ignored Plaintiff's request for information and gave Plaintiff a dirty

17  look.  West Tr. 116:3–117:22.  Plaintiff also alleges that a bus operator pulled away from

18  the bus stop near the SCCLL before Plaintiff could board when he was running out of the

19  SCCLL parking lot, yelling wait, waving his arms, and was 10 to 12 feet behind it.  *Id*.

20  116:6–9, 121:25–122:14.  He also alleges that at various time and various dates, VTA

21  drivers would curse at him make comments like "look at that black queen" and "there goes

22  that mother fucker" when he was exiting the library and walking by the bus stops.  *Id*.

23  116:17–24

24      On October 9, 2024, Plaintiff alleges that there were two separate instances of VTA

25  employees "blocking the handicap ramp access," which he documented in an email to

26  Huynh.  West Tr. 146:4–147:7; ECF 75-4 (Huynh Tr., Ex. 3).  Plaintiff again saw the bus

27  operator standing in the same location on a later day.  West Tr. 147:16–19.

28

United States District Court
Northern District of California

### B.    Procedural Background

Plaintiff filed his initial complaint on September 5, 2023, along with an "in forma pauperis" (IFP) application.  ECF 1; ECF 2.  The Court granted Plaintiff's IFP application and granted him leave to amend after screening his complaint.  ECF 5.  After two amended complaints and two further rounds of screening, Plaintiff filed his Third Amended Complaint (TAC) on April 11, 2024.  ECF 35 (TAC).

On May 13, 2025, Defendant VTA filed the present Motion for Summary Judgment.  ECF 75 (Mot.).  Plaintiff opposed the motion.  ECF 99 (Opp'n).  Plaintiff also filed a request for judicial notice.  ECF 101.  Defendant replied to both Plaintiff's opposition and his request for judicial notice.  ECF 112 (Rep.).

All parties have consented to magistrate judge jurisdiction.  ECF 6; ECF 39.

## II.    LEGAL STANDARD

Summary judgment may be granted only when, drawing all inferences and resolving all doubts in favor of the nonmoving party, there is no genuine dispute as to any material fact.  Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 572 U.S. 650, 651 (2014); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when, under governing substantive law, it could affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  Bald assertions that genuine issues of material fact exist are insufficient.  *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).

The moving party bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings, and, by its own affidavits or discovery, set forth specific facts showing that a genuine issue of fact exists for trial.  Fed. R. Civ. P. 56(c); *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1004 (9th Cir. 1990) (citing *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983)).  All justifiable inferences, however,

1    must be drawn in the light most favorable to the nonmoving party. *Tolan*, 572 U.S. 651

2    (citing *Liberty Lobby*, 477 U.S. at 255).

## III.    DISCUSSION

Defendant moves for summary judgment on each of Plaintiff's six causes of action

in his Third Amended Complaint, arguing that each claim fails as a matter of law and as a

matter of fact. Mot. at 12. The Court grants Defendant's motion because, as further

explained below, it finds that Plaintiff failed to go beyond the pleadings to set forth

specific facts that show that a genuine issue of fact exists for trial.

### A.    Title VI Claims – Claims One and Five

Plaintiff alleges that Defendant violated Title VI, 42 U.S.C. § 2000d when it

racially discriminated against him (Claim One) and was deliberately indifferent towards

him (Claim Five). TAC.

Under Title VI, "an entity's liability is limited to the entity's own misconduct."

*United States v. Cnty. of Maricopa, Ariz.*, 889 F.3d 648, 652 (9th Cir. 2018) (citations

omitted). Thus, "an entity cannot be held vicariously liable on a *respondeat superior*

theory." *Id.* Here, the Court agrees with Defendant that for Claims One and Five, "each

instance alleged by Plaintiff concerns conduct by individual VTA employees, as opposed

to conduct by VTA as a collective entity." Mot. at 15; *see, e.g.,* TAC at 5–6, 19 (alleging

that Plaintiff was "subjected to harassment by VTA bus operators, security patrol, and

mechanic crew members" and was subjected to deliberate indifference when "VTA

managers and supervisors fail [sic] to take corrective measures"). Thus, the Court finds

that Defendant cannot be held vicariously liable for the alleged Title VI violations in

Claims One or Five under a *respondeat superior* theory.

However, a defendant can be held liable arising out of third party's actions, such as

if (1) the funding recipient is deliberately indifferent to known acts of discrimination by

the third party, or (2) the funding recipient has an official policy authorizing the

discriminatory actions. *Cnty. of Maricopa*, 889 F.3d at 652. The Court now analyzes

United States District Court
Northern District of California

Defendant's liability arising out of its employee's actions, and finds that Plaintiff has not shown a genuine dispute of material fact regarding Defendant's vicarious liability for the alleged violations in Claims One and Five.

### 1.    Claim Five – Deliberate Indifference

Claim Five alleges that Plaintiff was subjected to "deliberate indifference when VTA managers and supervisors with the power to take corrective measures were made aware of the harassment and discrimination based upon Plaintiff [sic] race and failed to take corrective measures" in violation of Title VI.  TAC at 18.  The Court finds that Plaintiff has not demonstrated a genuine issue of material fact that the VTA was deliberately indifferent because he has not shown evidence that VTA's actions were "clearly unreasonable."

Plaintiff argues that the VTA managers and supervisors were deliberately indifferent because they "had both actual and constructive knowledge of the harassment and failed to take corrective measure [sic] to stop the harassing conduct."  Opp'n at 19.  Specifically, Plaintiff claims that the VTA failed to take "prompt and effective steps reasonably calculated to end the harassment, eliminate the hostile parking lot environment, prevent its recurrence and address its effects as appropriate."  *Id.* at 17.

However, being "deliberately indifferent" does not require the defendant to "remedy" the harassment or ensure that their workers "conform their conduct" to certain rules, nor is it even a mere "reasonableness" standard.  *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999).  Rather, the question is whether the defendant was "clearly unreasonable in light of the known circumstances."  *Id.* at 649.  Thus, the Court finds that it is immaterial whether the VTA took "adequate" steps to remedy the discrimination.

Instead, the determining factor is whether Defendant's reactions to Plaintiff's complaints that put it on notice of alleged incidents of harassment and discrimination were "clearly unreasonable."  Defendant points to evidence showing its various responses to argue that no reasonable jury could find that Defendant was "clearly unreasonable."  For

United States District Court
Northern District of California

1   example, the February 2022 VTA reports that show the alleged incidents were logged and

2   "reviewed before the customer service cases were closed."  Mot. at 19.  Specifically, they

3   show that Defendant attempted to "identify the VTA employee that was the subject of

4   Plaintiff's complaint," had "multiple individuals" review the complaint for validity, and

5   requested video footage. Mot. at 9, 18 (citing Ambei Dec. ¶¶ 3–5, Ex. A).  Defendants

6   further pointed to other pieces of evidence that show that: (1) "VTA's Analyst of

7   Operations Administration also took action after receiving the email from the SCCLL

8   Director concerning alleged VTA conduct by forwarding it to the appropriate unit to

9   'investigate and monitor this location,'" (2) Defendant's customer service staff  had

10  "several back-and-forth email communications" with Plaintiff on February 25, 2022, and

11  (3) VTA responded to Plaintiff's Claim for Damages with a Notice of Rejection of Claim.

12  Mot. at 18–20 (citing Soto Dec. ¶¶ 4–5, Ex. A.; Schmidt Dec. ¶ 12, Ex. G.; Lim Dec. ¶ 4,

13  Ex. B)).  The Court finds that these actions were not "clearly unreasonable," as Defendant

14  acted when it became aware of Plaintiff's complaints.  Thus, it finds that Defendant met its

15  burden by identifying evidence that shows that there was an absence of genuine issue of

16  material fact on this issue.

17       Plaintiff then argues that there is a genuine factual dispute because Defendant did

18  not address, make contact with Plaintiff for, or follow up on all incidents, including not

19  responding to SCCLL Director Huynh's August 11, 2021, email.  Opp'n at 7, 10–11.

20  Plaintiff did not go beyond the pleadings to set forth the majority of these facts as required

21  by Federal Rule of Civil Procedure 56.  The only potential exception was the lack of

22  response to the August 11, 2021, email for which, while Plaintiff did not specifically give a

23  citation for, did file Huynh's email to Plaintiff stating he did not get an email back.  ECF

24  100, Ex. 2.  However, the Court finds that it is not significantly probative to Defendant's

25  deliberate indifference if Defendant missed responding to one email given other evidence

26  showing it investigated Plaintiff's complaints.  *See Karasek v. Regents of Univ. of*

27  *California,* 956 F.3d 1093, 1105 (9th Cir. 2020) (stating it is not deliberate indifference if

28  the entity was negligent, lazy, or careless).

As such, the Court finds that there is no reasonable jury could return a verdict for Plaintiff, and GRANTS summary judgment as to Claim Five.

### 2.    Claim One – Racial Discrimination

Claim One alleges that Defendant racially discriminated against Plaintiff when its workers harassed and were deliberately indifferent towards Plaintiff, violating Title VI, 42 U.S.C. § 2000d.  TAC ¶¶ 38, 41, 42.  The Court finds that Plaintiff has not shown a genuine issue of material fact that shows that Defendant can be held liable for its employees' conduct under a deliberate indifference or official policy theory under Title VI.

As outlined in the prior section, Plaintiff has not shown a genuine issue of material fact that Defendant was deliberately indifferent towards him under Title VI.  *Supra* Section III.A.1.

Plaintiff has also not shown a genuine issue of material fact that Defendant can be held liable due to an official policy that resulted in discrimination.  Defendant identified that "there is no evidence that VTA has discriminatory policies."  Mot. at 16.  In his opposition, Plaintiff did not present any evidence disputing this.  *See generally* Opp'n.

As such, the Court finds that there is no reasonable jury could return a verdict for Plaintiff, and GRANTS summary judgment as to Claim One.

### B.    Claim Two – Retaliation

Claim Two alleges that Defendant retaliated against Plaintiff when it failed to "stop the harassment or failure to respond to Plaintiff [sic] request and inquiries," in violation of part of Title VI, Section 2000d and 49 C.F.R. Part 21.11(e).  TAC at 13–14.  The Court finds that Plaintiff has not shown a genuine issue of material fact that Defendant retaliated against him because he has not shown evidence that there was an adverse action.

To start, no private right of action exists to enforce regulations under 49 C.F.R. Part 21.11(e) since the statute was enacted under § 602.  *See Alexander v. Sandoval*, 532 U.S. 275, 293 (stating that there is no right of action under regulations promulgated under § 602); 49 C.F.R. § 21.1 et seq.  The Court now focuses on Plaintiff's Title VI, Section 2000d retaliation claim.

1      To state a claim for Title VI retaliation, a plaintiff must show: (1) participation in a

2   protected activity, that was known to the defendants; (2) adverse action by the defendants

3   against the plaintiff; and (3) a causal connection between the plaintiff's protected activity

4   and the defendants' adverse action.  *Palmer v. Penfield Cent. Sch. Dist.*, 918 F. Supp. 2d

5   192, 199 (W.D.N.Y. 2013).  An adverse action is an action "based on a retaliatory motive

6   and is reasonably likely to deter the charging party or others from engaging in protected

7   activity," considering all the circumstances.[1]  *Burlington N. & Santa Fe Ry. Co. v. White*,

8   548 U.S. 53, 61, 71 (2006) (citations and quotations omitted).

9      Here, Plaintiff alleges that Defendant took the following adverse actions: "VTA

10  failed to investigate Plaintiff [sic] complaints, failed to follow up with Plaintiff regarding

11  his complaint of race discrimination and harassment, failed to abate the continued

12  discrimination and harassment as request [sic] by Plaintiff and failed to response [sic] to

13  Plaintiff [sic] follow up and request of public records on Feb 2, 2024 despite assurance

14  with a VTA customer supervisor that Plaintiff would get a follow up per VTA policy."

15  TAC at 14.  Defendant argues that "the evidence contradicts the existence of the alleged

16  'adverse actions,'" pointing to evidence that shows that Defendant investigated and

17  responded to Plaintiff's February 2022 and November 2022 complaints, communicated

18  with Plaintiff, and responded to Plaintiff's Claim for Damages.  Mot. at 18 (citing Ambei

19  Dec. ¶¶ 3–6, Ex. A, Ex. D; Schmidt Dec. ¶¶ 12, 19, Ex. G, Ex. N; Lim Dec. ¶ 4, Ex. B)).

20  Plaintiff did not, as required by Federal Rule of Civil Procedure 56, go beyond the

21  pleadings to set forth any retaliatory motive or any specific facts that rebuts Defendant's

22  argument, only conclusorily stating without citation that "Plaintiff suffered an adverse

23  action."  Opp'n at 21; *see Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730,

24  738 (9th Cir. 1979) (finding that mere conclusory testimony in moving papers is

25  insufficient to defeat summary judgment).

---

27  [1] For the analysis of Plaintiff's Title VI retaliation claim, the Court applies requirements for
28  a retaliation claim under Title VII.  *See Chandamuri v. Georgetown Univ.*, 274 F. Supp. 2d
    71, 84 (D.D.C. 2003) (applying Title VII retaliation analysis to a Title VI retaliation
    claim).

1    As such, the Court finds that there is no reasonable jury that could return a verdict

2    for Plaintiff, and GRANTS summary judgment as to Claim Two.

3    **C.    Claim Three – California Unruh Civil Rights Act**

4    Claim Three alleges that Defendant violated the California Unruh Civil Rights Act,

5    Cal. Civ. Code § 51(b), when it "subjected Plaintiff to harassment based upon race and

6    gender." TAC at 15. The Court finds that Plaintiff has not shown a genuine issue of

7    material fact that shows that Defendant can be held liable for discrimination under the

8    Unruh Act.

9    "In general, a person suffers discrimination under the [Unruh] Act when the person

10    presents himself or herself to a business with an intent to use its services but encounters an

11    exclusionary policy or practice that prevents him or her from using those services." *White*

12    *v. Square, Inc.*, 7 Cal. 5th 1019, 1023 (2019). The Act "imposes liability only on business

13    establishments." *Brennon B. v. Superior Ct.*, 57 Cal. App. 5th 367, 369 (2020). Further,

14    business establishments are only liable if they were "acting as a business establishment

15    when the alleged wrongful acts occurred." *H.M. v. Cnty. of Kern*, No. 20-cv-1339-JLT-

16    BAK-BAM, 2022 WL 1625183, at *5 (E.D. Cal. May 23, 2022). Indeed, the Act is

17    "aimed only at discrimination in relationships similar to the proprietor/customer sort."

18    *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 875 (9th Cir. 1996).

19    Here, regardless of whether Defendant is considered a business entity,[2] Defendant

20    points out that the majority of alleged harassment that Plaintiff argues violated the Unruh

21    Act did not occur while the VTA was acting as a business establishment and Plaintiff was

22    acting as the customer. Mot. at 21–22. For example, the alleged actions in the TAC from

23    August 10, 2021, February 24, 2022, and November 14, 2022, were not alleged to, and no

24    evidence was shown that, they occurred when Plaintiff was a customer or presenting

25    himself to the VTA to use its service. Rather, they occurred when Plaintiff was in the

26

27    _____

28    [2] The Court finds that it is not necessary for it to determine whether the VTA is considered a business entity. Thus, it DENIES Plaintiff's Requests for Judicial Notice at ECF 101 because they are not relevant to the Court's decision.

United States District Court
Northern District of California

1    SCCLL parking lot and not intending to use its services.  Mot. at 21; TAC at 5–6, 9, 21.

2    Plaintiff does not dispute this.

3         Defendant concedes that Plaintiff could have been acting as a patron when "Plaintiff

4    on several occasions attempted to board at the VTA bus . . . but bus operators pass Plaintiff

5    by and on another occasion Plaintiff was denied transit info [sic]."  Mot. at 21; TAC at 7.

6    However, Defendant also points out that failure to present evidence that the exclusion from

7    a public service was motivated by racial animus will result in summary judgment, and that

8    Plaintiff has not presented evidence of racial animus.  Mot. at 21–22; s*ee Clavon v. Roscoe*

9    *BK Rest., Inc.*, 572 F. App'x 487, 488 (9th Cir. 2014) (upholding summary judgment

10   because plaintiff "failed to present any evidence that his exclusion from the restaurant was

11   motivated by racial animus").  In his Opposition, Plaintiff did not point to any evidence

12   showing the bus operators were motivated by racial animus.  *See* Opp'n.

13        As such, the Court finds that there is no reasonable jury could return a verdict for

14   Plaintiff, and GRANTS summary judgment as to Claim Three.

15        **D.    Negligence Claims – Claims Four and Six**

16        Plaintiff alleges that Defendant violated California negligence statutes when it

17   failed to stop the alleged harassment (Claim Four) and negligently supervised its

18   employees (Claim Six).  The Court finds that Plaintiff has not shown a genuine issue of

19   material fact that shows that Defendant can be held liable for negligence.

20        To hold a public entity directly liable for a tort-like negligence, the injured party

21   must "identify a specific statute declaring the entity to be liable, or at least creating some

22   specific duty of care by the agency in favor of the injured party."  *Koussaya v. City of*

23   *Stockton*, 54 Cal. App. 5th 909, 943 (2020) (citations omitted) (cleaned up); Cal. Gov't

24   Code § 815 ("Except as provided by statute as provided by statute: a public entity is not

25   liable for an injury, whether such injury arises out of an act or omission of the public entity

26   or a public employee or any other person" ).

27        Here, Plaintiff did not refer to any statutory basis either declaring VTA directly

28   liable under the circumstances of this case or of one creating a specific duty of care.  Thus,

United States District Court
Northern District of California

11

Defendant cannot be held directly liable for Claim Four or Six. *See also Eastburn v. Reg'l Fire Prot. Auth.*, 31 Cal. 4th 1175, 1178 (finding that no statute imposes direct liability on public entities where a dispatcher failed or was delayed in responding to the millions of 911 calls they get); *Reel v. City of El Centro*, No. 22-cv-526-W-KSC, 2022 WL 14915608, at *7–8 (S.D. Cal. Oct. 25, 2022) ("California courts have held that a public entity cannot be held directly liable for the negligent hiring, retention, or supervision of . . . public employees because there is no statutory authority for imposing such liability." ).

A public entity can be held vicariously liable for negligence under California Government Code §§ 815.2 and 820. "The general rule is that an employee of a public entity is liable for his torts to the same extent as a private person (§ 820, subd. (a)) and the public entity is vicariously liable for any injury which its employee causes (§ 815.2, subd. (a)) to the same extent as a private employer (§ 815, subd. (b))." *California v. William S. Hart Union High Sch. Dist.*, 53 Cal. 4th 861, 868 (2012) (quoting *Societa per Azioni de Navigazione Italia v. City of L.A.*, 31 Cal. 3d 446, 463 (1982)). Thus, for "vicarious public entity liability to attach, a public employee, either named as a defendant or at least 'specifically identified' by the plaintiff, must have engaged in an act or omission giving rise to that employee's tort liability." *Koussaya*, 54 Cal. App. 5th at 944.

Here, Plaintiff only specifically named two individuals: "VTA Chief Operating Officer Evans and VTA Operators Managers Soto." TAC at 5. No other public employees are specifically identified. *See generally* TAC. Thus, Defendant can only be vicariously liable for negligence and negligent supervising to the extent VTA's Chief Operating Officer, David Hill,[3] and Operations Manager, Maria Soto, are personally liable.

In general, each person has a duty to act with reasonable care under the circumstance. *Regents of Univ. of Cal. v. Superior Ct.*, 4 Cal. 5th 607, 619 (2018) (citations omitted). However, "[a] person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some

---

[3] Inez Evans is no longer the Chief Operating Officer of the VTA. Soto Dec. ¶ 3, Ex. A. It is now David Hill. *Id.*

relationship between them which gives rise to a duty to act." *Id.* "Absent such a special relationship, there can be no individual liability to third parties for negligent hiring, retention or supervision of a fellow employee, and hence no vicarious liability." *William S. Hart Union High Sch. Dist.*, 53 Cal. 4th at 877.

Claim Four alleges that Defendant was negligent when it "allow[ed] the harassment and discrimination and fail[ed] to stop the harassment and discrimination once VTA knew of the conduct from Plaintiff's complaints to VTA customer service and VTA board secretary," and Claim Six alleges that Defendant was negligent "because of the negligent supervision of its VTA employees at the SCCLL parking lot." TAC at 17, 19. Hill and Soto did not create the peril (i.e., the alleged harassment and discrimination) in Counts Four and Six, and as Defendant argued, Plaintiff did not state facts that support a legal duty owed to Plaintiff, only conclusorily stating that VTA breached its duty of care to Plaintiff without elaborating where this duty came from or whether Hill and Soto had that duty as well. Mot. at 23, 25; TAC at 17. Plaintiff's Opposition also does not point to any specific facts that go beyond the pleadings to show that they did have a legal duty.

As such, the Court finds that there is no reasonable jury could return a verdict for Plaintiff, and GRANTS summary judgment as to Claims Four and Six.

## IV.    CONCLUSION

Accordingly, the Court GRANTS Defendant VTA's Motion for Summary Judgment on all of Plaintiff West's claims. It further DENIES Plaintiff's Requests for Judicial Notice.

**IT IS SO ORDERED.**

Dated:  September 5, 2025    _____
NATHANAEL M. COUSINS
United States Magistrate Judge